**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION | ) ) ) ) ) | Case No. _____ |
| COREY HARDIN and CHASE WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | Related Case: Case No. 1:20-cv-02804-VSB-RWL (Southern District of New York) |
| v. | ) ) | |
| TRON FOUNDATION, JUSTIN SUN, and ZHIQIANG (LUCIEN) CHEN, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................1

    The Underlying Action ...............................................................................................1

    The SEC's Enforcement Action and Issuance of New Interpretative Guidance .................2

    Movants' Subpoena to the SEC ..................................................................................3

STANDARD OF REVIEW .................................................................................................5

ARGUMENT.......................................................................................................................6

        I.     The SEC Waived Its Late Objections to the Subpoena ...............................7

        II.    The Subpoena Seeks Relevant Information....................................................8

        III.   The Subpoena Does Not Impose Undue Burden .......................................11

        IV.   The Subpoena Does Not Seek Privileged Information .............................13

        V.    This Motion Should Be Resolved in This Court........................................16

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agility Pub. Warehousing Co. v. U.S. Dep't of Def.*,
    246 F. Supp. 3d 34 (D.D.C. 2017) ....................................................................................6

*In re Apollo Grp., Inc. Sec. Litig.*,
    2007 WL 778653 (D.D.C. Mar. 12, 2007) .........................................................................8

*Balestra v. ATBCOIN LLC*,
    380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...............................................................................1

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
    318 F. Supp. 3d 347 (D.D.C. 2018) ...............................................................................5, 8

*Delaney, Migdail & Young, Chartered v. I.R.S.*,
    826 F.2d 124 (D.C. Cir. 1987) .........................................................................................15

*In re Denture Cream Prod. Liab. Litig.*,
    292 F.R.D. 120 (D.D.C. 2013) ...........................................................................................8

*Fachner v. Am. Econ. Ins. Co.*,
    2024 WL 445624 (D. Mont. Oct 9, 2024) ..........................................................................7

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
    2015 WL 5602342 (D.D.C. Sept. 4, 2015) .......................................................................17

*Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*,
    309 F.R.D. 41 (D.D.C. 2015) ...........................................................................................16

*GFL Advantage Fund, Ltd. v. Colkitt*,
    216 F.R.D. 189 (D.D.C. 2003) .........................................................................................14

*Innovator Enters. Inc. v. Jones*,
    28 F. Supp. 3d 14 (D.D.C. 2014) .....................................................................................10

*Mannina v. District of Columbia*,
    2019 WL 1993780 (D.D.C. May 6, 2019) ........................................................................14

*In re Micron Tech., Inc. Sec. Litig.*,
    264 F.R.D. 7 (D.D.C. 2010) ...............................................................................................6

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans
    Affs.*,
    257 F.R.D. 12 (D.D.C. 2009) .............................................................................................6

*In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*,
  333 F.R.D. 291 (D.D.C. 2019)..................................................................................7

*Pinter v. Dahl*,
  486 U.S. 622 (1988)..................................................................................8, 11

*In re Providian Fin. Corp. Sec. Litig.*,
  222 F.R.D. 22 (D.D.C. 2004)..................................................................................8, 12

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997)..................................................................................14

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir. 1982)..................................................................................16

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988)..................................................................................15

*SEC v. Sun*,
  No. 1:23-cv-02433-ER (S.D.N.Y.) ..................................................................................2, 11

*In re Shelton Fed. Grp., LLC*,
  2017 WL 3190558 (Bankr. D.D.C. July 26, 2017)..................................................................................14, 15

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)..................................................................................9

*Stati v. Republic of Kazakhstan*,
  2020 WL 3259244 (D.D.C. June 5, 2020)..................................................................................12, 13

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
  439 F.3d 740 (D.C. Cir. 2006)..................................................................................16

*U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*,
  301 F.R.D. 20 (D.D.C. 2014)..................................................................................8

*United States v. Deloitte LLP*,
  610 F.3d 129 (D.C. Cir. 2010)..................................................................................16

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 ..................................................................................11

*Watts v. S.E.C.*,
  482 F.3d 501 (D.C. Cir. 2007)..................................................................................6, 17

*Willingham v. Ashcroft*,
  228 F.R.D. 1 (D.D.C. 2005)..................................................................................15

iv

*Yousuf v. Samantar,*
    451 F.3d 248 (D.C. Cir. 2006) ..............................................................................................16

**Other Authorities**

Application of the Federal Securities Laws to Certain Types of Crypto Assests
    and Certain Transactions Involving Crypto Assets,
    91 Fed. Reg. 13714 (Mar. 23, 2026) ...................................................................................3, 15

Fed. R. Civ. P. 45 ...................................................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 45 ("Rule 45"), Plaintiffs Corey Hardin and Chase Williams, on behalf of themselves and all others similarly situated ("Movants"), respectfully move to compel the U.S. Securities and Exchange Commission ("SEC") to comply with Requests 1–5 and 7–9 of the non-party subpoena *duces tecum* (the "Subpoena," Ex. 1),[1] issued by the U.S. District Court for the Southern District of New York, and properly served on the SEC in this District on March 26, 2026, in connection with the pending civil class action *Hardin, et al. v. Tron Foundation, et al.*, Case No. 1:20-cv-02804-VSB-RWL (S.D.N.Y.) (the "Underlying Action" or "*Tron*").

### BACKGROUND

**The Underlying Action**

Movants are lead plaintiffs for a putative class of individuals asserting claims under the Securities Act of 1933 (the "Securities Act") and various states' securities laws alleging that Defendants Tron Foundation, Justin Sun, and Zhiqiang Chen violated those laws by promoting, offering, and soliciting the sale of unregistered securities. The security at issue in this case is TRX, a digital token created, offered, and sold by Defendants. On April 3, 2020, Movants filed the Underlying Action in the Southern District of New York (the "Issuing Court"). Movants assert claims under Section 12(a)(1) of the Securities Act against all Defendants, and control person liability under Section 15 of the Securities Act against Defendant Justin Sun.

To establish that TRX is a security, a "necessary prerequisite" to their claims, *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 352 (S.D.N.Y. 2019), Movants' complaint incorporated the SEC's 2019 Framework for "Investment Contract" Analysis of Digital Assets ("2019

---

[1] Exhibit numbers reference those listed in the concurrently filed Declaration of Jordan A. Goldstein ("Goldstein Declaration").

Framework"), which analyzed when a digital asset like TRX could be a security under federal securities law. *Tron*, ECF No. 29 ¶¶ 107–132. Defendants advocated for the importance of the SEC's pronouncements, calling the Underlying Action "a case predicated on SEC guidance," *Tron*, ECF No. 153 at 4:18, and have otherwise amplified the significance of SEC guidance and actions in the Underlying Action. *See, e.g.*, *Tron*, ECF No. 134 at 10 ("[P]ending guidance from the S.E.C. may nevertheless clarify how *Howey* may be applied to crypto assets, streamlining discovery and focusing the parties and the court on what issues and discovery may be relevant.").

On October 23, 2024, the Issuing Court denied Defendants' motion to dismiss Movants' Section 12(a)(1) and related state law claims. *Tron*, ECF No. 114 at 34. On April 15, 2025, the Issuing Court bifurcated class certification discovery and merits discovery, *Tron*, ECF No. 156, and later ordered that Movants' file their motion in support of class certification by July 31, 2026, *Tron*, ECF No. 210. The Issuing Court further ordered that third-party discovery regarding class certification conclude by May 12, 2026, which has been extended to May 26, 2026, with respect to any motion by Movants to compel compliance with the Subpoena. *Id.*, *Tron*, ECF No. 216.

**The SEC's Enforcement Action and Issuance of New Interpretative Guidance**

On March 22, 2023, the SEC initiated an enforcement action against Defendants, which included Securities Act claims. *See SEC v. Sun*, No. 1:23-cv-02433-ER (S.D.N.Y.) (the "SEC Action"). As with Movants' federal securities claims, the SEC's ability to bring its Securities Act claims depended on whether TRX is a security. On March 9, 2026, Defendant Justin Sun and the SEC settled the SEC Action. Pursuant to the terms of that settlement, Justin Sun and the other defendants in that action agreed to pay a civil penalty of $10 million under Section 20(d) of the Securities Act. *SEC v. Sun*, ECF No. 98 at 2.

A week after that settlement, the SEC on March 17, 2026, issued new interpretive guidance regarding the application of federal securities laws to crypto assets such as TRX. *See* Application

2

of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, 91 Fed. Reg. 13714 (Mar. 23, 2026) ("2026 Crypto Interpretation"). The 2026 Crypto Interpretation expressly superseded the previous 2019 Framework which Movants had cited in their complaint in the Underlying Action. 2026 Crypto Interpretation at 13716 n.21; *See, e.g.*, *Tron*, ECF No. 29 ¶¶ 108, 109, 111, 113, 117, 120, 124. It named at least twenty specific crypto assets that it deemed not to be securities, but notably did not name TRX. *See* 2026 Crypto Interpretation, at 13718–20. The 2026 Crypto Interpretation deviated from the 2019 Framework in some notable aspects relevant to the Underlying Action. For example, the 2026 Crypto Interpretation created a new taxonomy for classifying crypto assets into five new categories based on their characteristics, with different implications for whether that crypto asset is deemed a security. 2026 Crypto Interpretation, at 13177. In the Interpretation, the SEC characterized its new guidance as a departure from its prior approach under the previous administration, stating that it was issued "[i]n light of the concerns raised about the Commission's approach before 2025 [and] the regulatory developments beginning in 2025." *Id.* at 13176.

**Movants' Subpoena to the SEC**

Given the importance of the 2026 Crypto Interpretation to the Underlying Action, the relationship between the SEC Action and the specific application of that guidance to TRX, and the connection between all of this information and critical legal questions such as whether TRX is a security and whether Defendants qualify as a "statutory seller," Movants subpoenaed the SEC for information relevant to these issues. Movants' Subpoena Requests 1–3 seek the factual record informing the Crypto Interpretation, and Requests 4–5 and 7–9 seek information regarding the application of the SEC's guidance to TRX and facts relevant to Defendants' statutory seller liability. Ex. 1 at 7–8.

3

Within approximately one week of the issuance of the 2026 Crypto Interpretation, Movants notified Defendants that Movants intended to serve the Subpoena and promptly served it on the SEC on March 26, 2026, which was within the period for completing third-party discovery during the Underlying Action's initial discovery period. Ex. 2. As stated in Movants' *Touhy* letter to the SEC, this information is "uniquely within the Commission's possession and cannot be obtained from Defendants or third parties because they reflect the Commission's internal analyses, investigative findings, and administrative record." Ex. 1 at 2.

The deadline for the SEC's response to the Subpoena passed on April 9, 2026. The SEC did not contact Movants until April 15, 2026, when it belatedly emailed (though did not serve) Movants its responses and objections to the Subpoena on April 15, 2026, objecting to the Subpoena in its entirety solely on grounds of undue burden and privilege. Ex. 3. In particular, the SEC contended that any information regarding the SEC Action should be obtained from other sources, "rather than imposing that burden on the SEC." *Id.* at 3.

Separately, Defendants moved to quash the Subpoena in the Issuing Court on April 14, 2026. *Tron*, ECF No. 201. While the motion to quash was pending, during a meet and confer on April 17, 2026, the SEC informed Movants that it would not negotiate regarding the production of any documents, pending resolution of Defendants' motion to quash. On April 28, 2026, the Issuing Court denied Defendants' motion without prejudice, holding that Defendants had filed their motion to quash in the wrong judicial district. *Tron*, ECF No. 211. Defendants never re-filed their motion to quash. Following the denial of the motion to quash, on May 1, 2026 Movants contacted the SEC in an attempt to renew negotiations over production. Ex. 4 at 3. During a meet and confer on May 4, 2026, the SEC stated that it maintained its objection to the entirety of the Subpoena. Goldstein Declaration ¶ 8. The same day, following the meet and confer, and in an attempt to avoid seeking

4

court intervention regarding the Subpoena, Movants wrote to the SEC and offered to narrow the Subpoena and to discuss a reasonable search protocol to minimize any burden. *Id*. The SEC did not respond to Movants' compromise offer until May 12, 2026, when it rejected Movants' proposal, maintaining its objections to the entirety of the Subpoena. Ex. 4 at 1. The SEC stated on a phone call on May 20, 2026, that it rejected any compromise approach. Goldstein Decl. ¶ 9.

Accordingly, on May 22, 2026, Movants filed this motion pursuant to Rule 45(d)(2)(B)(i) to compel the SEC's compliance with Request Nos. 1–5 and 7–9 of the Subpoena. In order to further minimize the burden on the SEC, Movants do not seek to compel compliance with Request No. 6 and are prepared to narrow Request No. 4 to the allegations in the SEC Complaint that apply to TRX.

<u>**STANDARD OF REVIEW**</u>

Rule 45 permits a party to an action to direct a non-party to produce "documents, electronically stored information, or tangible things at a place within 100 miles of where the [nonparty] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). "A subpoena must issue from the court where the action is pending," Fed. R. Civ. P. 45(a)(2), and "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection," Fed. R. Civ. P. 45(d)(2)(B)(i).

Upon a Rule 45 motion to compel, "the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation as defined by Rule 26(b)(1)." *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Then, the district court may consider "objections to the subpoena under the standards supplied by Rule 45." *Id*. The same standard applies to subpoenas directed at federal agencies as it does to those directed at any other third party. *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007); *see*

5

*also Agility Pub. Warehousing Co. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 41 n.7 (D.D.C. 2017) ("[T]he D.C. Circuit has held that the agency's refusal to comply with the subpoena is governed by the standards of Rule 45, not the APA."); *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affs.*, 257 F.R.D. 12, 15–16 (D.D.C. 2009) ("[W]here a valid subpoena has been served upon a government agency, the controlling legal standard by which the court reviews whether the agency must comply is based on [Rule 45]."). Accordingly, although an agency's *Touhy* regulations are relevant for determining how an agency responds to a subpoena, they do not otherwise provide a "legal basis for any opposition to [a] subpoena[,] [which] must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure." *Watts*, 482 F.3d at 509 (quotations omitted)). "[T]he burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).

## **ARGUMENT**

Movants respectfully request that this Court enforce the Subpoena and compel the SEC's compliance. *First*, the SEC waived its objections to the Subpoena by failing to serve them before the 14-day deadline mandated by Rule 45(d)(2)(B). *Second*, the Subpoena seeks information directly relevant to the Underlying Action. Both Movants and Defendants have acknowledged that the SEC's interpretive guidance is an important issue in the case. The Subpoena seeks information directly relevant to the degree of deference the Issuing Court may give to that guidance, as well as to core legal issues such as whether TRX is a security and whether Defendants were statutory sellers of TRX. *Third*, the SEC cannot satisfy its burden—as the party resisting discovery—to establish the validity of its undue burden and privilege objections because Movants seek non-privileged information through requests which are tailored to minimize its burden, and the SEC

declined to engage in any discussions about reasonable steps to further address their concerns about privilege and burden.

## I.    The SEC Waived Its Late Objections to the Subpoena

As a preliminary matter, the SEC waived its objections to the Subpoena because it failed to respond to it within 14 days of service. A subpoenaed party may object to the subpoena, but they must do so before "the *earlier* of the time specified for compliance [in the subpoena] or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). Therefore, a responding party waives its objections if they are not served before the earlier of the subpoena's compliance date or 14 days after its service. *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019).

Here, Movants served the Subpoena on the SEC on March 26, 2026, and the deadline for the SEC's response to the Subpoena passed on April 9, 2026. The SEC emailed[2] Movants its responses and objections to the Subpoena on April 15, 2026, twenty days after service of the Subpoena. Thus, the SEC waived its untimely—and procedurally defective—objections to the Subpoena, and this Court should not consider them. The SEC's waiver alone is sufficient for the Court to order the SEC's compliance with the Subpoena.

---

[2] Rule 5, which governs service of the SEC's objections, does not allow for email service unless a party consents to such service in writing. Fed. R. Civ. P. 5(b)(2)(F); *See Fachner v. Am. Econ. Ins. Co.*, 2024 WL 445624, at *3 (D. Mont. Oct 9, 2024) ("Rule 45(d)(2)(B) requires that objections be 'served' on the party or attorney designated in the subpoena, which means that objections must comply with Rule 5 of the Federal Rules of Civil Procedure governing service."). The SEC emailed Movants its objections, even though Movants had not consented to such service by them. Accordingly, the SEC's objections were waived for that independent reason as well.

7

## II.    The Subpoena Seeks Relevant Information

Even if the SEC's objections were timely (and they are not), the Court should compel the SEC's response to the Subpoena because it seeks highly relevant information and the SEC has not, and cannot, challenge the Subpoena on relevance grounds.

Consistent with Rule 26(b), "with respect to a Rule 45 subpoena, '[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009)); *see U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 n.3 (D.D.C. 2014) (noting the test for relevancy is the same for parties and non-parties). When the success of a claim or a defense "turns on whether facts essential to its application are disputed," those facts are relevant and discoverable. *Buzzfeed*, 318 F. Supp. 3d at 358 (citation modified). Parties routinely subpoena information held by an agency that pursued enforcement action related to the subject of private litigation, or where agency action is at issue in the interpretation or application of a legal question in such litigation. *See In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 27–28 (D.D.C. 2004) (granting motion to compel compliance with nonparty subpoena for agency's factual materials relevant to element of plaintiffs' fraud claim); *In re Apollo Grp., Inc. Sec. Litig.*, 2007 WL 778653, at *7 (D.D.C. Mar. 12, 2007) (denying motion to quash a nonparty subpoena because the manner in which agency action was conducted and the agency's factual record was relevant to a party's defense in the underlying action).

There is no dispute regarding the relevance of the record that informed the SEC's interpretations to the Underlying Action, which is precisely the information sought in Requests 1–3. In the Underlying Action, Movants must establish that TRX was a security under the Securities Act during the class period. *See Pinter v. Dahl*, 486 U.S. 622, 643 (1988). That will necessarily

8

involve examining the SEC's changing positions on how to determine whether crypto-assets like TRX are securities, including in relation to the question of how much deference the SEC's guidance is owed. In Defendants' words, the SEC's interpretive guidance, if "principled and well thought out on the[] issues," could be "so powerful" as to be dispositive of that threshold issue. *Tron*, ECF No. 153 at 14:25–15:1, 14:21. As noted, Movants incorporated the 2019 Guidance into their complaint. *Tron*, ECF No. 29 ¶¶ 107–132.  Defendants have further described actual and hypothetical changes to the SEC's interpretive guidance as "a complete sea change in the legal landscape applicable to this case and crypto assets in general …." *Tron*, ECF No. 141 at 9. Defendants have also stated that the (then-anticipated) 2026 Crypto Interpretation was relevant to the Movants' claims because, *inter alia*, "this is a case predicated on SEC guidance," *Tron*, ECF No. 153 at 4:18,  the SEC's views would "guide how you would even determine whether something is a securities offering under the law," *id.* at 11:15–17, and it would "guide[] what th[e] case would look like going forward … [and] what discovery might look like going forward," *id.* at 13:1–3. Indeed, Defendants asserted that the 2026 Crypto Interpretation was so likely to be dispositive of the Underlying Action that it warranted staying the entire proceeding until the SEC issued it*, Tron*, ECF No. 134 at 1, and have repeatedly reserved the right to again move for a stay on this basis, *see, e.g.*, *Tron*, ECF No. 156 at 7, ECF No. 187 at 7, ECF No. 210 at 7 (all stating that "[t]he proposed schedule is without prejudice to Defendants' rights to renew their motion to seek a stay …."). Movants need not agree with that position to acknowledge that it makes the SEC's record relevant. And Defendants correctly noted that the SEC's *reasoning* in the 2026 Crypto Interpretation needed to be "principled and well thought out" to be entitled to any deference in the Underlying Action. *Tron*, ECF No. 153 at 14:25–15:1; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (to understand the "weight" to be afforded to agency guidance, a court may

consider "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); *Innovator Enters. Inc. v. Jones*, 28 F. Supp. 3d 14, 24 (D.D.C. 2014) (declining to defer under *Skidmore* where the agency decision lacked the "power to persuade" because the agency "failed to 'examine the relevant [facts]' before coming to a final conclusion"). Defendants have specifically expressed that they believe this issue may be dispositive at class certification, which is imminently due to be briefed in the Underlying Action, and in fact, have repeatedly rejected Movants offers to *not* litigate the issue of whether TRX is a security at this stage of the litigation. *See* ECF No. 202 at 3.

Similarly, the SEC Action represents the SEC's application of its own guidance to TRX, and that is precisely the information sought in Requests 4–5 and 7–9. Movants narrow the scope of Request 4 to only apply to allegations regarding TRX and not BTT. Request 4 seeks the record supporting the allegations of the SEC Action, which was active during the development of the 2026 Crypto Interpretation, and is therefore directly relevant to assessing the weight to which that guidance is entitled. It also goes directly to how that guidance applies, or should apply, to TRX, the token at issue in the Underlying Action. Movants Requests 5 and 7–9 simply seek more specific information relating to allegations in the SEC Action that are directly related to the legal issues in the Underlying Action, including not only the record supporting those allegations but any other information in the SEC's possession related to them. Moreover, Defendants in the Underlying Action have extensively relied upon the SEC's decisions in dismissing or staying actions as relevant to their own action before the Issuing Court. *See, e.g.*, ECF No. 141 at 2 & n.4 (listing the stays or dispositions of eight SEC investigations or actions against crypto-related entities), ECF No. 153 at 12:8–13 (The SEC "just dismissed—or signaled dismissal of … some of the key cases

10

that raised these issues … [s]o you don't need to be a master at reading tea leaves to know where they're headed here.").

In addition to this obvious relevance, certain of the Requests are also relevant to Defendants' statutory seller liability. Key issues Movants must demonstrate at class certification include whether Defendants "solicit[ed] the purchase" of TRX on a classwide basis and whether Defendants were "motivated at least in part by a desire to serve [their] own financial interests." *See Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Information regarding, but not limited to, the allegations described in paragraphs 39 to 50 of the SEC Complaint—sought by Requests 4, 5, and 7—is relevant to establishing how Defendants used mass communications to market TRX as an investment to investors based in the United States. *See In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 187 (S.D.N.Y. 2003) (holding a defendant's appearances before investors and financial news agencies promoting the security at issue and financial interest in its share price could show that he could be a statutory seller). Additionally, information regarding Defendants' celebrity endorsement campaigns to drive investor interest in TRX, also sought in Requests 4, 5, and 7, is relevant to this issue. *See SEC v. Sun*, ECF No. 59 ¶ 5. Thus, the Requests regarding the SEC Action target facts relevant to the elements of Movants' claim and their burden at class certification.

## III.     The Subpoena Does Not Impose Undue Burden

On their face, the requests are not burdensome, and Movants have on multiple occasions offered to work with the SEC to accommodate the SEC's objection to burden. *See, e.g.*, Ex. 4 at 2.

The SEC cannot sustain its burden objection on its bare assertion that the materials related to the SEC Action can be obtained from other sources. Ex. 3 at 3. As an initial matter, as discussed above, a critical purpose of the Subpoena is to understand the SEC's factual record so that the Issuing Court can properly evaluate the deference the agency's actions are afforded in the

11

Underlying Action. Only the SEC can produce its own record. Moreover, even if it were true that some of the underlying information is also in the possession, custody and control of Defendants, that does not excuse the SEC from responding to the subpoena where, as here, Defendants have resisted producing that information to Movants. *See In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. at 25 (holding that agency "cannot refuse to comply with the subpoena on the ground that the information is obtainable by plaintiffs elsewhere" where the party allegedly in possession of the materials has refused to produce it).

Further, the SEC cannot demonstrate that the Subpoena imposes an undue burden. In its response to the Subpoena, the SEC stated that "searching for and producing the requested information would place an undue burden on its Staff." Ex. 3 at 3. But "[a] party resisting a subpoena on undue burden grounds 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.'" *Stati v. Republic of Kazakhstan*, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020) (quoting Wright & Miller's, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008)). Therefore, the SEC's boilerplate assertion cannot itself sustain its burden to show "the manner and extent of the burden" and the consequences of compliance. *Id*.; *see also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190–91 (D.D.C. 1998) (explaining that boilerplate burdensomeness objections do not comply with the Federal Rules and offer an insufficient basis for courts to rule on discovery disputes); *see also Doe v. District of Columbia*, 230 F.R.D. 47, 52 (D.D.C. 2005) (citing Athridge).

Movants crafted their requests specifically to minimize the burden on the SEC. Movants drafted the Subpoena requests to reflect the manner in which the SEC organizes information— *e.g.*, by reference to the record supporting its interpretive guidance (Requests 1–3) and the

12

information supporting specific enforcement actions (Requests 4–9)—rather than demanding that the SEC sift through requests keyed to specific topics and make responsiveness determinations as to each document in response to search terms negotiated by the parties. To the extent Movants' assumption that this would facilitate the SEC's production is incorrect, the SEC refused to discuss other options or respond to Movants' offers to, *e.g.*, propose mutually agreeable search protocols to ease the SEC's burden. The SEC cannot simultaneously claim that merely searching for the information at issue constitutes undue burden while refusing to engage in any substantive discussion about minimizing its burden. To date, the SEC has not put forth a counterproposal of its own, despite Movants' efforts to compromise. Moreover, the SEC has not indicated that "it actually conducted a preliminary search to determine the nature and scope of its records," to provide a basis to sustain the SEC's objection. *Stati*, 2020 WL 3259244, at *9.

**IV.    The Subpoena Does Not Seek Privileged Information**

As stated in Movants' *Touhy* letter, the Subpoena does "not seek[] privileged materials." Ex. 1 at 2. Indeed, Movants have voluntarily withdrawn Request 6 from this motion to avoid the complication of its intersection with privileged materials and the burden that might be created by the need to segregate privileged and non-privileged information. Rule 45(e)(2)(A) requires a party that objects to a subpoena on grounds of privilege to "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that … will enable the parties to assess the claim." In objections to the Subpoena, the SEC merely stated:

> The SEC objects to the Subpoena to the extent it seeks production of documents and information protected by the work product doctrine, attorney-client privilege, deliberative process privilege, or any other applicable privilege or protection.

Ex. 3 at 3. Beyond this boilerplate objection, the SEC did not provide further details of the categories of documents it asserts *might* be subject to any privilege or protection, notwithstanding

Movants' stated intent to *not* seek such privileged materials. Contrary to its obligations under Rule 45, to date, the SEC has not furnished any description of the materials it contends are privileged in a manner that would "enable the parties to assess the claim," or indicated in any way that it would do so. Fed. R. Civ. P. 45(e)(2)(A)(ii). Because this rule is "obviously mandatory," the SEC should be deemed to have "waive[d] [its] underlying privilege claim[s]." *GFL Advantage Fund, Ltd. v. Colkitt,* 216 F.R.D. 189, 195 (D.D.C. 2003) (quoting *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001)). Accordingly, the SEC's inchoate—and untimely—invocation of privilege does not provide an independent basis to refuse to respond to Movants' plainly relevant requests, much less grounds to object to the Subpoena in its entirety. *See In re Shelton Fed. Grp., LLC*, 2017 WL 3190558, at *3 (Bankr. D.D.C. July 26, 2017) ("[B]ecause a subpoena may request some privileged documents does not justify quashing the whole request.").

Regardless, to the extent the SEC stands on its objection to the Subpoena in its entirety on the grounds of deliberative process privilege, Movants do not seek materials protected by this privilege. Instead, as detailed above, Movants seek the agency's factual record, which does not implicate this privilege. *In re Sealed Case*, 121 F.3d 729, 750 (D.C. Cir. 1997). The deliberative process privilege is a qualified privilege that can only be invoked for material that is both "predecisional" and "deliberative," and the privilege can be overcome "flexibly on a case-by-case, ad hoc basis." *Id*. at 737–38. The SEC has yet to provide any information that would allow the Court to even begin to assess whether the privilege applies, which is the SEC's burden.[3]

---

[3] "To assert the deliberative process privilege, a party must submit: (1) a formal claim of privilege by the head of the relevant department; (2) based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege was claimed and why it properly falls within the scope of the privilege." *Mannina v. District of Columbia*, 2019 WL 1993780, at *7 (D.D.C. May 6, 2019).

Similarly, to the extent that the SEC contends that it is not required to produce materials covered by the law enforcement investigatory privilege regarding the SEC Action requests, the SEC has not formally invoked the privilege—a requirement to sustain the privilege—nor has it met its other obligations regarding the privilege to "ensure that the privilege is presented in a deliberate, considered, and reasonably specific manner."[4] *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). The law enforcement investigatory privilege is also qualified, and "the public interest in nondisclosure" may be overcome by "the need of a particular litigant for access to the privileged information." *Id*. at 272 (listing ten factors the district court must consider in this balancing). Again, the SEC's boilerplate invocation of "any other applicable privilege or protection" cannot sustain the privilege and does not provide this Court with any information necessary to make this determination.

Finally, the work product privilege does not shield the SEC from disclosure and does not comprise independent grounds to object to the Subpoena as a whole. *In re Shelton*, 2017 WL 3190558, at *3. The work product privilege is "limited to documents prepared in anticipation of litigation." *Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 126 (D.C. Cir. 1987). Requests 1–3 seek information regarding the factual record compiled in connection with the issuance of regulatory guidance—not for the purpose of "advanc[ing] the [SEC's] interest in the successful resolution of [specific] litigation." *Willingham v. Ashcroft*, 228 F.R.D. 1, 3 (D.D.C. 2005); 2026 Crypto Interpretation, 91 Fed. Reg. at 13716 (Mar. 23, 2026) (stating its purpose as

---

[4] "To sustain the claim [of law enforcement investigatory privilege], three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).

15

"provid[ing] greater clarity regarding the [SEC's] treatment of crypto assets under the Federal securities laws"). Even where the privilege may apply, fact work product only retains "qualified protection," *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982), allowing its disclosure "when the requesting party can show a 'substantial need' for the material and an inability to procure equivalent information 'without undue hardship.'" *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) (quoting Fed. R. Civ. P. 2626(b)(3)(A)(ii)). Here, Movants' Subpoena seek factual materials relevant to the core of their claims in the Underlying Action: the threshold issue of whether TRX is a security and the substantive bases for Defendants' status as statutory sellers of TRX. These materials comprise the SEC's factual record that it considered, which necessarily cannot be obtained through other sources. To the extent that the work product privilege may apply to the Requests, Movants have demonstrated the requisite need and hardship to warrant disclosure. And regardless, the SEC's bare assertion of the privilege does not sustain its "burden of demonstrating facts sufficient to establish the privilege's applicability" and prejudices Movants' "right to contest the claims of privilege." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 751 (D.C. Cir. 2006).

## V.    This Motion Should Be Resolved in This Court

This Court has jurisdiction to enforce the Subpoena because compliance is required within this Court's district, *see* Fed. R. Civ. P. 45(d)(2)(B)(i), and the Government is "subject to subpoena under Rule 45 regardless whether it is a party to the underlying litigation," *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006). Only "exceptional circumstances" justify the transfer of this motion to another court without Movants' consent. Fed. R. Civ. P. 45(f). Exceptional circumstances may exist when resolving a motion to compel a Rule 45 subpoena "requires delving into substantive issues in the highly complex Underlying Action," *Fed. Home Loan Mortg. Corp.*

16

*v. Deloitte & Touche LLP,* 309 F.R.D. 41, 43 (D.D.C. 2015), such that the issuing court is better positioned to resolve the dispute.

Here, no such exceptional circumstances justify deviating from the strong presumption that "subpoena-related disputes be litigated in the district designated for compliance." *Fed. Deposit Ins. Corp. v. Galan-Alvarez,* 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015). The question of whether the SEC must comply with the Subpoena notwithstanding the SEC's objections to burden and privilege is "a legal question severable from the merits of the underlying litigation." *See id*. In fact, as the court where compliance is required for Rule 45 subpoenas directed at the SEC and other federal agencies headquartered in Washington, D.C., this Court is uniquely well-positioned to resolve this motion. *See Watts*, 482 F.3d at 510 (transferring a motion regarding a Rule 45 subpoena issued from the District Court for the District of New Jersey to the "District Court for the District of Columbia, where the SEC's privilege and undue burden assertions may be reviewed in the first instance under the standards set forth in [Rule] 45"). The parties in the Underlying Action have put the information demanded by the Subpoena at issue and its relevance is grounded in administrative law principles well familiar to this Court, and which do not require any extensive understanding of the facts of the Underlying Action.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant the Motion to Compel by entering an order compelling the SEC to produce documents and materials responsive to the duly issued and properly served Subpoena.

Dated:   New York, NY
         May 22, 2026

Respectfully submitted,

SELENDY GAY PLLC


By:      /s/  *Corey Stoughton*
         Corey Stoughton (D.C Bar No. 319537)
         SELENDY GAY PLLC
         1290 Avenue of the Americas
         New York, NY  10104
         Tel: 212-390-9000
         cstoughton@selendygay.com

         Jordan A. Goldstein*
         SELENDY GAY PLLC
         1290 Avenue of the Americas
         New York, NY 10104
         Tel.: 212-390-9000
         jgoldstein@selendygay.com

         * *Pro Hac Vice* Application Forthcoming

         *Attorneys for Plaintiffs and the Proposed Class*

18